# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (CENTRAL DIVISION)

In re:

**SHAKHAB, LLC d/b/a DEPOT SQUARE DELI & PACKAGE STORE,**

        **Debtor.**

**Chapter 7**
**Case No. 25-40594-EDK**

---

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING PRIVATE SALE OF CERTAIN ESTATE REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (II) SETTING DEADLINE FOR REMOVAL OF CERTAIN PERSONAL PROPERTY BY LIENHOLDERS AND OWNERS**
**(Re: 104 Pleasant Street, East Brookfield, Massachusetts 01515)**

To the Honorable Elizabeth D. Katz, Chief United States Bankruptcy Judge:

NOW COMES Joseph H. Baldiga, the Chapter 7 trustee (the "Trustee") of the

bankruptcy estate (the "Estate") of Shakhab, LLC d/b/a Depot Square Deli & Package Store (the

"Debtor"), and hereby moves this Court (the "Motion") for entry of an Order (the "Sale Order"),

pursuant to §§ 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), Fed.

R. Bankr. P. Rule 2002(a)(2), 6004(c) and 6007 and MLBR 6004-1 and 6007-1, authorizing and

approving the proposed private sale (the "Private Sale") of the Estate's right, title and interest in

certain real property located at 104 Pleasant Street, East Brookfield, Massachusetts 01515,

together with all buildings, structures and improvements now or hereafter existing thereon

(collectively, the "Real Property"), to John David Holdcraft or his nominee (the "Buyer").

While the proposed Private Sale of the Real Property excludes (1) the Debtor's interest in any

licenses or permits to sell food, liquor and cigarettes at the Real property (collectively, the

"Licenses") and (2) any and all personal property of the Debtor remaining at the Real Property

(collectively, the "Personal Property"), the Trustee requests that the Court (a) require any purported lienholders or owners of the Personal Property remove such property within fifteen (15) days after entry of the Sale Order (the "Removal Deadline") and (b) order that to the extent that any Personal Property is not removed by the Removal Deadline, such Personal Property shall be deemed abandoned to allow the Buyer to dispose of and/or use any such property without any accounting or liability to the holder of any interest therein.

The Real Property and the terms and conditions of the Private Sale are more specifically defined and described in the Purchase and Sale Agreement (the "Purchase Agreement") between the Trustee and the Buyer attached hereto as **Exhibit A**[1] and in the Trustee's proposed Notice of Intended Sale of Estate Property (the "Notice of Private Sale") filed concurrently herewith.

The Trustee further requests that the Private Sale be free and clear of all liens, claims, interests, and encumbrances asserted by any entity, with any such interest in the Real Property, when established, attaching to the proceeds realized from the sale of the Real Property in the same order of priority subject, if necessary, to a later determination by the Bankruptcy Court of the validity, extent, perfection, and amount of such interest.  Any such claim, lien, interest or encumbrance shall also be subordinate to any and all necessary administrative costs and expenses incurred in connection with the Private Sale, including compensation of expenses of the Trustee, the Trustee's counsel and the Trustee's real estate broker, Peggy Pratt, Century 21 North East – Pratt Properties Team (the "Broker").

The purchase price for the Real Property is $240,000.00 (the "Purchase Price").  As discussed further herein, the Real Property is encumbered by a lien held by Leader Bank, N.A.

---

[1]    The Purchase Agreement is inclusive of the addenda attached thereto in **Exhibit A**.

15008/14429/4919-3258-7631 v.1

("Leader Bank"), and Leader Bank has consented to the Private Sale.  The Debtor is cooperating

with the Trustee to facilitate the Private Sale and has also consented to the Private Sale.

In support of this Motion, the Trustee states as follows:

## I.     FACTUAL BACKGROUND

1.      On June 5, 2025 (the "Petition Date"), the Debtor filed a petition for relief under

Chapter 7 of the Bankruptcy Code.

2.      On June 5, 2025, the United States Trustee appointed Joseph H. Baldiga as

Chapter 7 trustee of this case and he continues to serve as such.

3.      The initial meeting of creditors pursuant to Bankruptcy Code § 341(a) was held

on July 9, 2025 (the "§ 341(a) Meeting").

4.      At the § 341(a) Meeting, the Trustee determined that there was a potential for

recovery of funds for the benefit of the Estate in connection with a sale of the Real Property.

5.      Prior to the Petition Date, the Debtor operated a general store offering deli items,

beer, wine, hard alcohol, cigarettes, lottery tickets and various other packaged goods.  The

Debtor's principal informed the Trustee that prior to the store's closure, the Debtor had

maintained all necessary licenses and permits to sell food, liquor and cigarettes (i.e., the

Licenses) at the Real Property.  The Trustee has not independently verified the existence or the

validity of the Licenses.

6.      Subsequent to the § 341(a) Meeting, the Trustee arranged for the Massachusetts

State Lottery Commission ("MA Lottery") to remove its machinery and remaining inventory of

lottery tickets.  The Trustee also arranged for the owner of the contents of the Debtor-owned

ATM to remove its contents (i.e., cash).  Nonetheless, as of the date hereof, a substantial amount

of Personal Property remains at the Real Property that is owned by, or subject to liens held by,

15008/14429/4919-3258-7631 v.1

other parties, including without limitation alcohol, food products, other inventory and beverage coolers.

7.      On July 11, 2025, the Trustee filed an Application for Authority to Employ Real Estate Broker (Re: Peggy Pratt, Century 21 North East – Pratt Properties Team) [Dkt. No. 14] (the "Application to Employ") seeking to employ Peggy Pratt (i.e., the Broker) as real estate broker to act as agent for the Trustee and assist in listing, marketing and selling the Estate's interest in the Real Property pursuant to certain terms and conditions set forth in that certain Exclusive Right to Sell Listing Agreement dated on or about July 3, 2025.

8.      The Court entered its Order approving the Application to Employ on July 29, 2025 [Dkt. No. 16].

## II.      THE REAL PROPERTY AND THE TRUSTEE'S SALE EFFORTS

9.      The Debtor listed the Real Property on its Schedule A/B with a value as of the Petition Date of $472,000.00.

10.      The Debtor listed certain Personal Property on its Schedule A/B with an aggregate value of $35,150.00.

11.      On its Schedule D, the Debtor listed Leader Bank as having a lien against the Real Property in the amount of $147,892.00.

12.      On September 17, 2025, Leader Bank indicated that the amount of its claim secured by its lien was approximately $172,000.00 as of that date.

13.      On its Schedule D, the Debtor listed (i) Leader Bank, (ii) MA Lottery and (iii) New Lane Finance as having liens on certain Personal Property of the Debtor (collectively, the "Scheduled Liens").

15008/14429/4919-3258-7631 v.1

14.    According to the UCC database for the Secretary of State's Office for the Commonwealth of Massachusetts, the U.S. Small Business Administration and Country Bank for Savings also have liens on all personal property of the Debtor, including but not limited to the Personal Property and the Licenses (together, the "UCC Liens"; collectively with the Scheduled Liens, the "Personal Property Liens").

15.    Since the Trustee engaged the Broker, the Trustee, with the assistance of the Broker, has listed for sale and actively marketed the Real Property.

### III.    THE PROPOSED PRIVATE SALE OF THE REAL PROPERTY

16.    Pursuant to Bankruptcy Code § 541(a), the Debtor's interest in the Real Property is an asset of the Estate.  The Trustee now seeks to sell the Real Property by Private Sale to monetize the Estate's interest in the Real Property.  As described more fully below, the proposed Private Sale of the Real Property excludes the Debtor's Personal Property and the Licenses, but the Trustee will cooperate with the Buyer (or any higher, successful bidder) in facilitating the procurement of the Licenses, although such procurement is not a condition of the Private Sale.

17.    The Trustee and the Buyer agreed upon the terms for sale of the Real Property as outlined in the Purchase Agreement.  The Trustee asserts that consummating the Private Sale on the terms and conditions as outlined in the Purchase Agreement and as described in detail in the Notice of Private Sale is in the best interest of the Estate.  The Trustee has worked extensively with the Broker to attract offers for the Real Property, but several factors have made these efforts challenging, including but not limited to the condition of the Real Property and the uncertain status and transferability of the Licenses and Personal Property.  Accordingly, the Trustee asserts that the Purchase Price that he is receiving for the Real Property is reasonable.

15008/14429/4919-3258-7631 v.1

18.     The Trustee has accepted an offer (the "Offer") to purchase the Real Property from the Buyer in the amount of $240,000.00 (i.e., the Purchase Price).  The Buyer has also provided the Broker with total deposits of $15,000.00 (the "Deposit") to hold in escrow and credit toward the Purchase Price.

19.     **The Trustee is selling the Real Property "as is and where is" and makes no representations or warranties as to the Real Property and potential buyers are encouraged to do their own due diligence.  The Broker is available to arrange showings and inspections of the Real Property with potential buyers.  In addition, the Trustee makes no representations, warranties or commitments with respect to the Personal Property or the Licenses other than as set forth herein or the Purchase Agreement.**

20.     The Offer is the only offer received by the Trustee to date and is "all-cash".

21.     While the Trustee believes that the amount of the Offer is reasonable, the Trustee and his Broker will, nonetheless, continue to actively solicit higher and better offers for the Real Property, directly and through the Broker, and the Broker will continue to market the Real Property.  The sale procedures provided for herein and described in the Notice of Private Sale will also provide for an opportunity for potential competitive bidders to inspect the Real Property and submit competitive bids if interested in the Real Property.

22.     Absent a higher offer for the Real Property, the Trustee will proceed with the Private Sale and the Buyer will acquire the Real Property free and clear of all liens, claims, interests, and encumbrances.

23.     The Trustee will serve the Notice of Private Sale on all creditors and other parties in interest, on any party that has expressed an interest to the Trustee or the Broker in acquiring

15008/14429/4919-3258-7631 v.1

the Real Property, and on parties who have previously contacted the Trustee and requested notice

of the Trustee's sales of assets.

### IV.    THE PERSONAL PROPERTY AND THE LICENSES

24.    Because the proposed Private Sale of the Real Property excludes the Debtor's

Personal Property, the Trustee requests that the Court require that any purported lienholders or

owners of the Personal Property remove such property, as is and where is, by the Removal

Deadline.  To the extent that any purported lienholders or owners of the Debtor's Personal

Property fail to remove Personal Property in which they assert an interest by the Removal

Deadline, the Trustee further requests that such property be deemed abandoned by the Trustee to

allow the Buyer, after the Closing Date (defined below), to dispose of and/or use any such

property without any accounting or liability to the holder of any interest therein.

25.    The Private Sale also excludes the Licenses, and the Trustee is not seeking

authority herein to transfer the Debtor's interest in the Licenses.  The Trustee will be cooperative

in facilitating the procurement of the Licenses by the Buyer; provided, however, that the Trustee

makes no representations, warranties or commitments regarding the issuance, transferability or

validity of any such Licenses, and the Buyer's procurement of the Licenses is not a condition of

the Private Sale.

### V.    A PRIVATE SALE OF THE REAL PROPERTY IS IN THE BEST INTEREST OF THE DEBTOR'S ESTATE AND CREDITORS

26.    The proposed Private Sale of the Real Property is in the best interest of the Estate

and its creditors and will further the paramount goal of maximizing the funds available for

distribution to creditors.  See In re Integrated Res., Inc., 135 B.R. 746, 750 (Bankr. S.D.N.Y.

1992), aff'd 147 B.R. 650 (S.D.N.Y. 1992), appeal dismissed 3 F.3d 49 (2d Cir. 1993)

(explaining that the main responsibility of a debtor and primary concern of the Bankruptcy Court

is to maximize value of assets to be sold). Against this backdrop, a Bankruptcy Court has a large measure of discretion in determining whether a private sale should be approved. In re Embrace Sys. Corp., 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995).

27.     The Private Sale will provide a meaningful cash benefit to the Estate and will allow the Trustee to dispose of the Real Property in a timely and cost-effective manner.

28.     In addition, the Private Sale will allow the Trustee to avoid future carrying expenses and risks associated with a continued and prolonged marketing period, such as risks related to security, winterization costs and insurance costs. As of the date hereof, the Trustee has already incurred significant insurance costs for the Real Property and will continue to incur such costs absent approval of the Private Sale of the Real Property.

29.     After consultation with the Broker, the Trustee determined that a Private Sale of the Real Property, with the Buyer or another successful bidder, is most likely to generate the maximum benefit to the Estate.

30.     Additionally, the Trustee believes that a "public auction" would not likely attract meaningful interest and could result in wasteful expense.

31.     Based on the foregoing, the Trustee believes that the Purchase Price is fair and reasonable and that the Private Sale will allow the Trustee to fund a meaningful return to creditors.

32.     In order to expeditiously administer the Estate, and to the extent that creditors and/or parties asserting an interest in the Real Property fail to timely object to the Private Sale set forth in the attached Notice of Private Sale, those creditors and parties shall be deemed to have consented to the sale of the Real Property free and clear of any lien, claim, interest or encumbrance. Further, any party claiming an interest in the Real Property will be responsible

15008/14429/4919-3258-7631 v.1

for, on a <u>pro</u> <u>rata</u> basis, (a) the costs of the Private Sale incurred by the Estate in the preservation

of the Real Property and (b) the proportionate share of the administrative expenses incurred by

the Estate in connection with the Private Sale, including, but not limited to, compensation and

expenses for the Trustee, the Trustee's counsel, the Broker, any other professional employed by

the Trustee and capital gains taxes, if any.

33.      Pursuant to Bankruptcy Code § 506(c), the Trustee reserves the right to seek

recovery of the reasonable and necessary costs and expenses of preserving or disposing of the

Real Property to the extent of any benefit conferred on the creditors, whether the Real Property is

sold, or the creditor successfully objects to the intended Private Sale.

## VI.    <u>LEGAL BASIS FOR SALE "FREE AND CLEAR"</u>

34.      Through the proposed Private Sale, the Buyer will acquire the Debtor's interest in

the Real Property free and clear of all liens, interests, claims, and encumbrances.  Bankruptcy

Code § 363(f) authorizes a trustee to sell property under § 363(b) "free and clear of any interest

in such property of an entity other than the estate" if one of the following conditions is satisfied:

      a.      applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

      b.      such entity consents;

      c.      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

      d.      such interest is in bona fide dispute; or

      e.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

35.      The Trustee has reviewed the extent of the possible liens on the Real Property.

Specifically, the Trustee reviewed the Debtor's <u>Schedule D</u>, the claims listed on the Claims

Register, the UCC database and the records of the Worcester District Registry of Deeds with respect to the Debtor and the Real Property.

36.     Based on the Trustee's investigation, Leader Bank is the only purported lienholder with an interest in the Real Property.

37.     Leader Bank has consented to the Private Sale in satisfaction of Bankruptcy Code § 363(f)(2).  Additionally, because Leader Bank's interest is a lien and the price at which the Real Property is to be sold ($240,000.00) is greater than the aggregate value of all liens on such property (approximately $172,000.00), Bankruptcy Code § 363(f)(3) is satisfied with respect to Leader Bank.  As such, a sale "free and clear" is permissible.

38.      Any perfected, enforceable, valid liens or interests shall attach to the proceeds of the Private Sale to the extent permitted under applicable law.  The Trustee reserves the right to challenge, without limitation, the amount, validity, and perfection of any such claims.

39.     As described more fully above, the Private Sale excludes the Debtor's Personal Property and the Licenses.  Accordingly, the Trustee is not required to satisfy Bankruptcy Code § 363(f) with respect to the Personal Property Liens.

## VII.     THE SALE TERMS AND OVERBID REQUIREMENT

40.     For and in consideration of the purchase of the Estate's interest in the Real Property, the Buyer has offered to pay $240,000.00 (i.e., the Purchase Price) to the Trustee as set forth in the Purchase Agreement.   As noted above, the Private Sale excludes the Debtor's Personal Property and the Licenses.

41.     Pursuant to the Purchase Agreement but subject to approval of this Court, the closing of the Private Sale will occur within thirty (30) days of the Bankruptcy Court's entry of the Sale Order (the "Closing Date").

15008/14429/4919-3258-7631 v.1

42.     As noted previously, the contemplated Private Sale will be free and clear of all liens, claims, interests, charges, and encumbrances of any type or any nature arising pre- or post-filing, with liens, adverse claims, and encumbrances, if any, to attach to the net proceeds of the Private Sale.

43.     The Trustee asserts that the Purchase Price represents fair value for the Real Property.  Nonetheless, the Trustee and the Broker will continue, through the date that this Court establishes as the deadline for interested parties to submit higher and better offers for the Real Property, to solicit and accept higher and better offers for the Real Property in an effort to generate the highest possible sale price for the Real Property.

44.     In the event of counteroffers for the Real Property, the Trustee has requested an overbid minimum of $10,000.00 (the "Overbid Minimum"), accompanied by a deposit equal to that of the Buyer, $15,000.00.  Therefore, to submit a qualified counteroffer to purchase the Real Property, interested parties must offer a sum of not less than $250,000.00, comprised of the Purchase Price ($240,000.00) and the Overbid Minimum ($10,000.00).  In compliance with MLBR 6004-1(c)(2)(B)(ii), the Overbid Minimum ($10,000.00) does not exceed five percent (5%) of the Purchase Price ($12,000.00).

45.     In the event of other offers, all competing bidders must provide a deposit of $15,000.00 to the Trustee in accordance with the Notice of Private Sale.

46.     Upon information and belief, the Buyer is a good faith buyer under Bankruptcy Code § 363(m).  As required by Bankruptcy Code § 363(m), the Trustee and the Buyer have acted in good faith in negotiating the terms outlined in the Purchase Agreement and set forth herein.  The Purchase Agreement is the product of good faith negotiations between the parties. There are no undisclosed agreements between the parties.

15008/14429/4919-3258-7631 v.1

47.    In addition, the proposed bidding procedures establish a process whereby interested parties are encouraged to compete to establish the fair value of the Real Property. Accordingly, the Trustee requests that this Court make a finding that the Buyer is entitled to the protections of Bankruptcy Code § 363(m).

48.    Any creditor and/or party-in-interest ultimately determined to have an allowed interest in the Real Property, including the Buyer, will be liable to the Estate for:

    a.    the pro rata costs of the sale of the Real Property;

    b.    costs incurred by the Trustee in the preservation of the Real Property; and

    c.    a proportionate share of the administrative expenses incurred by the Trustee, the Trustee's counsel, the Broker, any other professional employed by the Trustee in preparing and conducting the Private Sale and capital gains taxes, if any.

49.    The Trustee has summarized only a portion of the provisions of the Purchase Agreement and urges creditors and other parties-in-interest to review the Purchase Agreement independently.  **See Exhibit A**.

## VIII.  BROKERS' COMMISSIONS

50.    Pursuant to the terms of the Broker's engagement, as approved by this Court, the Broker is entitled to receive a commission on the gross selling price of the Real Property (i.e., the Purchase Price) in the amount of three percent (3%).  Therefore, in the event that the Trustee sells the Real Property to another successful bidder, the Broker's commission will be based on three percent (3%) of the higher purchase price amount.  The commission will be paid by the Trustee from the net sale proceeds to be received by the Estate.

51.    The Buyer's real estate broker is Century 21 North East (the "Buyer's Broker"). Subject to this Court's approval, as part of the Buyer's accepted offer, the Buyer's Broker is entitled to receive a commission on the Purchase Price in the amount of two percent (2%).

15008/14429/4919-3258-7631 v.1

52.     Accordingly, the Trustee seeks this Court's approval of the payment, at the closing of the Private Sale, of (i) commission in the amount of $7,200.00 from the sum of the Purchase Price (i.e., $240,000.00) to the Broker, and (ii) commission in the amount of $4,800.00 from the sum of the Purchase Price to the Buyer's Broker, or in each instance, such higher amounts based on an equal percentage of the ultimate purchase price.

## IX.    BREAK-UP FEE

53.     To proceed with the Private Sale, the Buyer has required, and the Trustee has agreed to, a break-up fee in connection with its offer to purchase the Real Property in the amount of $7,500.00 (the "Break-Up Fee").  In compliance with MLBR 6004-1(c)(2)(B)(i), the Break-Up Fee ($7,500.00) does not exceed the lesser of five percent (5%) of the Purchase Price ($12,000.00) or $50,000.00.

54.     The Break-Up Fee was and is a material inducement for, and a condition of, the Buyer's Offer.  The Trustee submits that the proposed Break-Up Fee is fair and reasonable in view of the efforts extended by the Buyer to date and the likelihood that those efforts will result in a material benefit to the Estate.  The Notice of Private Sale will notify potential bidders of this requirement.  The Overbid Minimum of $10,000.00 will be sufficient to fund the proposed Break-Up Fee and also provide a benefit to the Estate.

55.     The Break-Up Fee will be payable out of the proceeds of the Private Sale of the Real Property and only in the event that the Trustee sells the Real Property to a party other than the Buyer.  As such, the Trustee requests that the Court approve the Trustee's payment of the Break-Up Fee in the event that the Buyer is not the ultimate purchaser of the Real Property and further that the Buyer be relieved of the obligation to submit a separate application for payment of the Break-Up Fee.

15008/14429/4919-3258-7631 v.1

## X.    **REQUEST FOR WAIVER OF STAY OF ORDER**

56.    To allow the Trustee to expeditiously close the Private Sale, the Trustee further

requests that the Sale Order be immediately effective and not stayed pursuant to Fed. R. Bankr.

P. 6004(h), or otherwise.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order:

a)    authorizing, approving, ratifying, and confirming the sale, transfer, and conveyance of the Real Property to the Buyer or to a successful bidder, free and clear of all liens, adverse claims, interests, and encumbrances of any type or nature upon the terms and conditions set forth herein and in the Purchase Agreement;

b)    authorizing the Trustee's proposed sale procedures with respect to the Private Sale of the Real Property, including the payment of the Break-Up Fee, if applicable;

c)    requiring any purported lienholders or owners of the Debtor's Personal Property to remove such property by the Removal Deadline;

d)    effecting the abandonment of any Personal Property remaining at the Real Property after the Removal Deadline and allowing the Buyer, after the Closing Date, to dispose of and/or use such Personal Property without any accounting or liability to the holder of an interest therein;

e)    authorizing the Trustee to pay, at the closing of the Private Sale, the (i) commission in the amount of $7,200.00 from the sum of the Purchase Price to the Broker, and (ii) commission of $4,800.00 from the sum of the Purchase Price to the Buyer's Broker, or, such higher amounts based on an equal percentage of the ultimate purchase price;

f)    authorizing the Trustee to pay Leader Bank the balance of its claim in full satisfaction of its lien;

g)    providing that all liens, adverse claims, interests, and encumbrances of any type or nature, if any, shall attach to the net proceeds of the Private Sale of the Real Property;

h)    finding that the Private Sale is in good faith and that the purchase of the Real Property has acted in good faith as contemplated under Bankruptcy Code § 363(m);

i)    authorizing the Trustee to execute such documents and otherwise take such actions as the Trustee deems necessary or appropriate to consummate

the Private Sale of the Real Property on the terms described herein and in the Purchase Agreement;

j)     providing that the Sale Order is immediately effective and is not stayed pursuant to Fed. R. Bankr. P. 6004(h), or otherwise; and

k)     granting the Trustee such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

**JOSEPH H. BALDIGA,
CHAPTER 7 TRUSTEE**


*/s/ Shannah L. Colbert*

Joseph H. Baldiga, BBO #549963
Shannah L. Colbert, BBO #712955
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA  01581
Phone: (508) 898-1501
Email: jbaldiga@miricklaw.com
            scolbert@miricklaw.com

Dated: October 3, 2025

# **Exhibit A**

**Shakhab, LLC d/b/a Depot Square Deli & Package Store, Debtor**
**Chapter 7, Case No. 25-40594-EDK**

**PURCHASE AND SALE AGREEMENT**

**DATE OF AGREEMENT: As of September 2⁵, 2025**

**PARTIES:**

| **Seller** | **Seller Attorney** |
|---|---|
| Joseph H. Baldiga | Shannah L. Colbert, Esq. |
| Ch. 7 Trustee for Shakhab LLC d/b/a Depot | Mirick, O'Connell, DeMallie & Lougee, LLP |
| Square Deli & Package Store ("Debtor") | 1800 West Park Drive, Suite 400 |
| Mirick, O'Connell, DeMallie & Lougee, LLP | Westborough, MA 01581 |
| 1800 West Park Drive, Suite 400 | Telephone: 508-898-1501 |
| Westborough, MA 01581 | Fax: 508.772.0594 |
| Telephone: 508-860-1448 | Email: scolbert@mircklaw.com |
| Fax:508.983.6232 | |
| Email: jbaldiga@mircklaw.com | |

| **Buyer** | **Buyer's Attorney** |
|---|---|
| John David Holdcraft | Karen E. Davis, Esq. |
| PO Box 699 | George & Davis, PC |
| Brookfield, Ma 01506 | 509 Main Street, PO Box 199 |
| | Sturbridge, MA  01566 |
| | Telephone: 508-347-7114 |
| | Fax: 508-347-5627 |
| | Email: karen@regeorge.net |

**PROPERTY ADDRESS:**      **104 Pleasant Street, East Brookfield, Ma 01515 ("Premises")**

**TIME FOR PERFORMANCE:  Within thirty (30) days of Bankruptcy Court approval of the sale
(the "Closing Deadline").**

| **PURCHASE PRICE:** | **$** | **240,000.00** |
|---|---|---|
| Deposit at offer | $ | 5,000.00 |
| Deposit paid at P&S | $ | 10,000.00 |
| Funds due at closing* | $ | 225,000.00 |

*to be paid by bank or certified check, cashiers, or attorney trustee check, or wire transfer.

**Inclusions: Seller/Trustee will request in the motion seeking approval of this sale that the
Bankruptcy Court include in its order approving this sale (the "Sale Order") that all personal
property remaining at the Premises that has not been removed by a lienholder creditor or owner
within fifteen (15) days after the date of the Sale Order (the "Removal Deadline") shall be
abandoned and the Buyer, upon closing, shall be free to dispose of and/or use any such property
without any accounting or liability to the holder of an interest therein; provided, however, that
inclusion of such provision in the Sale Order is not a condition of this sale.**

15008/14429/4932-4607-5242 v.2

## 1. PARTIES
Agreement made on this day by and between the Parties identified above.

## 2. DESCRIPTION
SELLER agrees to sell and BUYER agrees to buy, upon the terms, provisions, conditions and covenants set forth herein, the land and improvements thereon described in the Exhibit A hereto attached (i.e., the Premises).

## 3. TIME FOR PERFORMANCE
The deed is to be delivered at the closing attorney's office on or before the Closing Deadline unless otherwise agreed upon in writing. The Premises are being sold as is, where is, with no representations, warranties, covenants or conditions other than as expressly provided herein.

## 4. MORTGAGE CONTINGENCY
N/A

## 5. BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES, ETC.
Included in the sale as a part of said Premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith, including if any, screens, screen doors, shutters, furnaces, heaters, heating equipment, stoves, ranges, hot water heaters, plumbing and bathroom fixtures, electric and other lighting fixtures, mantels, television antennas, fences, gates, trees, shrubs and plants, and only if built in, air conditioning equipment, ventilators, and, if so ordered by the Bankruptcy Court, any personal property not removed by the Removal Deadline.

## 6. PLAN – Intentionally Omitted

## 7. TITLE DEED
Said premises are to be conveyed by a good and sufficient trustee deed running to the BUYER, or to the nominee designated by the BUYER by a written notice to the SELLER at least ten (10) days before the deed is to be delivered as provided herein; and said deed shall convey the Debtor's right, title and interest to and in the subject Premises, free of any and all liens, charges or encumbrances of whatsoever nature and description except:

A. Such real estate taxes for the then current year as are not yet due and payable on or before the date of delivery of the deed;

B. Any liens for municipal betterment assessments made after the date of execution by all Parties of this Agreement.

C. Provisions of existing building and zoning laws.

D. Any and all rights, restrictions or easements of record if any, insofar as the same are in full force and applicable to the subject Premises, but not affecting the value or intended use thereof.

E. Existing rights and obligations in party walls which are not the subject of written agreement.

F. Usual public utilities servicing the property, if any.

G. Mortgage's not assumed which are to be discharged as a result of this transaction, which discharges shall be recorded within a reasonable time after the recording of the closing documents.

Any questions regarding title or practice shall be resolved in accordance with the title and practice standards of the Real Estate Bar Association.

## 8. TITLE REFERENCE
The title reference is Book 80297, Page 210

## 9. INSPECTION CONTINGENCY: N/A.

## 10. POSSESSION AND CONDITION OF PREMISES
Full possession of said Premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said Premises to be then in the same condition as they now are, reasonable use and wear thereof excepted. The BUYER shall be entitled to one inspection of said Premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause. Seller makes no representations or warranties as to the condition of the Premises and the Premises are being sold "as is" and "where is."
From and after the date of this agreement, SELLER agrees to permit BUYER and its designees reasonable access by appointment to the Premises for the purpose of making measurements, and the like, but not more than once prior to closing. Said access will be at a reasonable time, by appointment and in the presence of SELLER or SELLER'S agent.

## 11. EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the Premises, all as herein stipulated, or if at the time of delivery of the deed the Premises does not conform with the provisions hereof, the SELLER may elect to use reasonable effort to remove any defects in title or to deliver possession as provided herein, or to make the said Premises conform to the provisions hereof as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty (30) days, or for a longer period if agreed to by the Parties.

## 12. FAILURE TO GIVE TITLE OR MAKE PREMISES CONFORM
If, at the expiration of the time for performance hereunder, the SELLER shall not be able to give title; or deliver possession; or except for a fire or other unavoidable casualty, make the Premises conform; as the case may be, and all as herein agreed, then at the BUYER's election, any and all payments made by the BUYER hereunder shall be forthwith refunded to the BUYER and all obligations of all Parties hereto shall cease.

## 13. BUYER'S ELECTION TO ACCEPT TITLE
The BUYER shall have the right to elect, at the time for the performance hereunder, to accept such title as the SELLER can deliver to said Premises in their then condition, provided that the acceptance of a deed by the BUYER shall be deemed to be a full performance and discharge of this Agreement.

## 14. INSURANCE, FIRE AND OTHER CASUALTY
In case of any damage to the Premises by fire or other casualty after the signing and delivery of this

Agreement by all Parties hereto, and unless the Premises shall have been restored to its former condition by the SELLER prior to the performance date, the BUYER may, at the BUYER'S option, either cancel this Agreement and recover all sums paid hereunder or require as part of this Agreement that the SELLER pay over or assign, on delivery of Deed, all sums recovered or recoverable on any and all insurance covering such damage.

## 15.  USE OF PURCHASE MONEY TO CLEAR TITLE

To enable the SELLER to make conveyance as herein provided, the SELLER may at the time of the delivery of the deed use the purchase money or any portion thereof to clear the title of any and all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed, or as soon thereafter as practical.

## 16. ADJUSTMENTS

Taxes for the then current year and, if any, water, sewer use, rents and security deposits shall be apportioned and fuel value shall be adjusted as of 14 days prior to the delivery of the deed, and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed.

If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the next tax rate and valuation can be ascertained.

If any errors or omissions are found to have occurred in any calculations or figures used in the settlement statement signed by the Parties (or would have been included if not for any such error or omission) and notice hereof is given within six months of the date of delivery of the deed to the party to be charged, then such party agrees to make a payment to correct the error or omission. This clause shall survive the closing.

Should the taxes not be assessed at the time of the closing the Seller and the Buyer agree to do a post closing tax adjustment based on the actual assessment.

## 17.  DEPOSIT

All deposits made at the signing of the Offer to Purchase are presently being held by the agent for the SELLER, as Escrow Agent.  All deposits made hereafter by the BUYER shall be held by agent for the Seller, in a non-interest bearing account, subject to the terms of the within Agreement and shall be duly accounted for at the time of the delivery of the deed.

In the event of any disagreement between the Parties, the Escrow Agent shall retain all deposits made under this AGREEMENT, pending instructions mutually given by the SELLER and the BUYER, or by decision of the Bankruptcy Court.

The BUYER and the SELLER acknowledge that the Escrow Agent may be agent or counsel to one of the Parties and agree that Escrow Agent may continue to act as such agent or counsel notwithstanding any dispute or litigation arising with respect to the deposits or Escrow Agent's duties

## 18. BROKER'S COMMISSION

The SELLER acknowledges that a fee of three percent (3%) for professional services shall be paid by the SELLER to Seller's broker, the "LISTING BROKER", at the time for performance. In the event of a conflict between the terms of this Agreement and a prior fee agreement with the LISTING BROKER, the terms of the prior fee agreement shall control unless the SELLER and LISTING BROKER have expressly

agreed to a change in writing.

The SELLER and BUYER also acknowledge that a fee for professional services shall be paid to Century 21 North East, the "BUYER BROKER" from the following sources as follows (check and complete as applicable):

    X    SELLER                    Two Percent ( 2%)
    ____ BUYER          $_____ (   %)

For a TOTAL fee due to BUYER BROKER of two percent (2%) payable at the time for performance. In the event of a conflict between the terms of this Agreement and a prior fee agreement or addendum between the BUYER BROKER and BUYER, SELLER or LISTING BROKER, the terms of the prior fee agreement or addendum shall control unless the Parties or beneficiaries to that agreement or addendum expressly agreed to a change in writing. The BUYER further represents and warrants that there is no other broker with whom BUYER has dealt in connection with the purchase of the Premises. The BUYER and SELLER acknowledge receipt of a notice from the LISTING BROKER and/or BUYER BROKER, pursuant to 254 of the Code of Massachusetts Regulations Section 3.0 (13), regarding any agency relationship of the LISTING BROKER and/or BUYER BROKER with the BUYER and/or the SELLER.

It is agreed by BUYER and SELLER that SELLER's Broker and (if applicable) BUYER's Broker are intended beneficiaries of this contract.

SELLER and BUYER agree to hold harmless and indemnify the other from any loss, cost, damage and expenses, including reasonable attorney's fees incurred as a result of the falseness of this representation. The provisions of this paragraph shall survive the delivery of the deed.
All broker commissions are subject to Bankruptcy Court approval and shall be based upon the ultimate purchase price, in the event of higher bidders. The Seller will request that the Bankruptcy Court include in the Sale Order approval of the broker commissions and authorizations for the Seller/Trustee to pay same upon closing.

## 19. BUYER'S DEFAULT
In the event BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages, whereupon the within Agreement shall be null, void and of no force and effect, with no party hereto to have further recourse against another.

## 20. SELLER'S REPRESENTATIONS
The SELLER (or its representative) shall be under no obligation to attend the BUYER'S loan closing or to accept delivery of the purchase price at any place other than at the jurisdictional registry of deeds or other mutually agreeable place.  Seller is selling the Premises "as is" and "where is" and broker in representation on warranties as for the condition of the Premises on the Debtor's interest therein and the Buyer shall rely on it, own due diligence in determining same.

## 21. TITLE 5 – N/A.

## 22. VOLUNTARY EXECUTION
The Parties declare and acknowledge that they, and each of them, had the opportunity to have independent legal advice by counsel of their own selection; that each party hereto fully understands the provisions of the within Agreement; and that each party signs this Agreement freely and voluntarily.

The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he/she relied upon any warranties or representations not set forth or incorporated in this Agreement or previously made in writing.

## 23. CONSTRUCTION OF AGREEMENT

This instrument is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the Parties, is binding upon and inures to the benefit of the Parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER, their obligations hereunder shall be joint and several. The captions are used only as a matter of convenience and are not to be considered a part of this Agreement or to be used in determining the intent of the Parties to it.

## 24. I.R.S. FILING REQUIREMENTS

In the event the lender's attorney does not designate himself/ herself as the reporting agent, the BUYER's attorney shall report the information needed to comply with I.R.C. 6045(e).

## 25. ACCEPTANCE OF DEED

The acceptance of a deed by the BUYER or his/her nominee, as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are by the terms hereof, to be performed after the delivery of said deed

## 26. REPRESENTATIONS OF PARTIES - Intentionally Omitted.

## 27. NOTICES:

All notices required or permitted to be given hereunder shall be in writing and delivered by hand or made postage prepaid by registered or certified mail, addressed to BUYER, or SELLER, as the case may be, as follows:

To SELLER:

> Joseph H. Baldiga, Chapter 7 Trustee
> Mirick, O'Connell, DeMallie & Lougee, LLP
> 1800 West Park Drive, Suite 400
> Westborough, MA 01581
> 508-898-1501
> jbaldiga@miricklaw.com

And his COUNSEL:

> Shannah L. Colbert, Esq.
> Mirick, O'Connell, DeMallie & Lougee, LLP
> 1800 West Park Drive, Suite 400
> Westborough, MA 01581
> 508-898-1501
> scolbert@miricklaw.com

To BUYER:

> Karen E. Davis, Esq.
> George & Davis PC
> 509 Main St.

PO Box 199
Sturbridge, Ma  01566
508-347-7114
508-347-5627 fax
karen@regeorge.net


## 28.  POST CLOSING COMPLIANCE AND ADJUSTMENT

If any errors or omissions are found to have occurred in any calculations or figures used in the settlement statement signed by the Parties (or would have been included if not for any such error or omission) and notice hereof is given within sixty (60) days of the date of delivery of the deed to the party to be charged, then such party agrees promptly to make a payment to correct the error or omission.

The Parties hereto also agree to execute and deliver to the requesting party whatever additional documents or amendments to existing documents that are reasonably required to effectuate the sale and purchase and or clearing of title under this agreement provided such additional documents or amendments are prepared by the requesting party, and do not in any way adversely affect, or otherwise enlarge the liability of, any of the Parties relative to said sale and purchase. This provision shall survive the closing.

## 29.  ADDENDUM

This Agreement and any extensions, amendments or addendums thereto may be amended by documents or letter agreements signed by the Attorneys for both Parties, in which case each party shall be bound to and by the terms of such amendment.

This Agreement is subject to the Addendum attached hereto.

This Agreement and any amendment hereto are subject to Bankruptcy Court Approval.


IN WITNESS WHEREOF, the Parties have hereunto set their hands and seals this 25th day of September, 2025

John David Holdcraft, Buyer

Joseph H. Baldiga, Chapter 7 Trustee, Seller

## Addendum to Offer, as well as Purchase and Sale Agreement

Case Name: Shakhab, LLC d/b/a Depot Square Deli & Package Store ("Debtor")
Case No.: 25-40594-EDK

John David Holdcraft, the buyer ("Buyer") acknowledges that, as a condition of the sale contemplated herein of real property located at 104 Pleasant Street, East Brookfield, Massachusetts (the "Real Property"), the sale procedures provided by the Bankruptcy Court require that any offer accepted by the Chapter 7 Trustee (i.e., the seller herein) be served on all known creditors and parties-in-interest in order to solicit objections and/or counteroffers for the Real Property. The Buyer also acknowledges that Bankruptcy Court Rules further require a period of not less than twenty-one (21) days from the date the Trustee files a motion seeking approval of a buyer until the deadline for objections and/or counteroffers. The Trustee makes no representation as to how quickly Bankruptcy Court approval may be obtained, but estimates 30-45 days from the date he files the approval motion. Absent receipt of a higher offer for the Real Property, and subject to Bankruptcy Court approval, the Chapter 7 Trustee will proceed with the sale and the Buyer shall acquire the Real Property free and clear of all interests. In the event that a counteroffer is received by the Chapter 7 Trustee, the Bankruptcy Court will conduct a sealed bid auction hearing and, at that time, the proposed Buyer shall have the opportunity to submit a higher offer. The Chapter 7 Trustee will be required to sell the Real Property to the highest bidder and will hold all deposits received in connection with the Real Property until the highest bidder closes or forfeits. In the event of forfeiture by the highest bidder, the Chapter 7 Trustee will look to sell the Real Property to the second highest bidder, and the second highest bidder will either promptly close on the sale or, likewise, forfeit its deposit. If the seller obtains Bankruptcy Court approval and the buyer fails to perform for any reason, all deposits shall be forfeited to the Chapter 7 Trustee.

Dated as of this 25th day of September 2025.

Seller: Joseph H. Baldiga, Ch. 7 Trustee

Buyer: John David Holdcraft

15008/14429/4932-4607-5242 v.2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(CENTRAL DIVISION)**

| | |
|---|---|
| In re:<br><br>**SHAKHAB, LLC d/b/a DEPOT SQUARE**<br>**DELI & PACKAGE STORE,**<br><br>**Debtor.** | **Chapter 7**<br>**Case No. 25-40594-EDK** |

**ORDER (I) AUTHORIZING AND APPROVING PRIVATE SALE OF CERTAIN**
**ESTATE REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS,**
**AND ENCUMBRANCES AND (II) SETTING DEADLINE FOR REMOVAL OF**
**CERTAIN PERSONAL PROPERTY BY LIENHOLDERS AND OWNERS**
(Re: 104 Pleasant Street, East Brookfield, Massachusetts 01515)

THIS MATTER having come before the Court upon the motion (the "Motion to Approve Private Sale") of Joseph H. Baldiga, the Chapter 7 trustee in the above-captioned case (the "Trustee"), for an Order approving and authorizing the proposed private sale (the "Private Sale") of certain real property located 104 Pleasant Street, East Brookfield, Massachusetts 01515, together with all buildings, structures and improvements now or hereafter existing thereon (collectively, the "Real Property"), free and clear of liens, claims, interests, and encumbrances, to John David Holdcroft (the "Buyer"), upon the terms of the Purchase and Sale Agreement attached to the Motion to Approve Private Sale as **Exhibit A** and as described in the Trustee's Notice of Intended Private Sale of Estate Property filed with this Court (the "Notice of Private Sale"); and sufficient notice thereof having been duly given, no objection to the Motion to Approve Private Sale having been filed, or any such objection having been overruled after a hearing as appropriate under the circumstances; and no counteroffer for the Real Property having been submitted; and the Court finding that the notice given by the Trustee as set forth in the Certificate of Service filed with the Court was sufficient, it is hereby ORDERED THAT:

1.  The Trustee is authorized, pursuant to 11 U.S.C. § 363(f), to sell the bankruptcy estate's right, title, and interest in the Real Property identified in the Notice of Private Sale to the Buyer, for the sum of $240,000.00 (the "Purchase Price"), free and clear of all liens, claims, interests, and encumbrances, with any and all such interests in the Real Property, when established, attaching to the proceeds realized from the Private Sale in the same order of priority subject, if necessary, to later determination by the Bankruptcy Court of the validity, extent, and perfection of such interest.

2.  The Buyer is required to close on the Private Sale within thirty (30) days of entry of this Order (the "Closing Date").  Notwithstanding this provision, the Trustee and the Buyer may mutually agree to an extension of the Closing Date.

3.  Any purported lienholders or owners of the above-captioned debtor's personal property remaining at the Real Property (the "Personal Property") are required to remove any Personal Property in which they assert an interest within fifteen (15) days after the date of this Order (the "Removal Deadline").  Any Personal Property remaining at the Real Property following the Removal Deadline shall be deemed abandoned by the Trustee, and, after the Closing Date, the Buyer may dispose of and/or use such Personal Property without any accounting or liability to the holder of any interest therein.

4.  Upon the closing of the Private Sale, the Trustee is authorized to pay the (i) commission in the amount of $7,200.00 from the sum of the Purchase Price to the Trustee's broker and (ii) commission in the amount of $4,800.00 from the sum of the Purchase Price to the Buyer's broker, or, such higher amounts based on an equal percentage of the ultimate purchase price.

15008/14429/4919-3258-7631 v.1

5.      Upon closing of the Private Sale, the Trustee is authorized to pay the secured claim held by Leader Bank, N.A.

6.      The Trustee is authorized to satisfy the Estate's pro rata share of any unpaid real estate taxes and other municipal charges from sale proceeds at the closing of the Private Sale.

7.      In the event that the Buyer fails to close on the Private Sale on or before the Closing Date, the Trustee is authorized to sell the Real Property to the second highest bidder, _____, who will be required to close within twenty (20) days of receipt of notice from the Trustee that the Trustee is proceeding with the sale with the second highest bidder or such extended period of time as the Trustee, in his discretion, allows, for a price of $_____.  In the event that the second highest bidder fails to timely close, the second highest bidder shall forfeit its deposit, and the Trustee may re-notice the proposed sale.

8.      The Trustee is hereby authorized to execute such documents and otherwise take such actions as the Trustee deems reasonably necessary or appropriate to consummate the Private Sale of the Real Property on the terms described in the Trustee's Motion to Approve Private Sale and the Notice of Private Sale.

9.      The Private Sale be and is authorized in accordance with the Trustee's Motion to Approve Private Sale and the Notice of Private Sale.

10.      This Court finds that (a) the Trustee and the Buyer have acted in good faith in negotiating at arm's length the terms of this sale and (b) this sale is a product of good faith negotiations between the parties.  Accordingly, the Buyer is a good faith buyer under 11 U.S.C. § 363(m) and shall be and hereby is entitled to the protections provided herein.  In the event that the Buyer fails to close on the Private Sale on or before the Closing Date, this Court's finding of good faith shall apply to the second highest bidder(s).

15008/14429/4919-3258-7631 v.1

11.     This Order is immediately effective and is not stayed pursuant to Fed. R. Bankr.

P. 6004(h), or otherwise.


Dated: _____, 2025            _____
                                     Honorable Elizabeth D. Katz, Chief Judge
                                     United States Bankruptcy Court

4